STATE OF MINNESOTA *vs.* WINONA & ST. PETER RAILROAD
COMPANY.

Jan. 11, 1875.

**Railroad Land Grant Exempt from Taxation till Lands are Sold and Conveyed.**—
*First Division of the St. Paul & Pacific R. Co.* v. *Parcher,* 14 Minn. 297,
followed, adhered to, and applied to this case. *Held,* that the Winona & St.
Peter R. Co., having succeeded to "the rights, benefits, privileges, property,
franchises and interests" of the Transit R. Co., is entitled to hold the lands
granted to the latter company, (by the territorial act of May 22, 1857,) ex-
empt from taxation, as provided in section 4, sub-chapter 2, of said act.

**Same—Such Exemption not Forbidden by State Constitution.**—The requirement
of the state constitution, that "laws shall be passed taxing * * * all real
and personal property at its true value in money," considered, and *held* not to
prohibit or render void the transfer of this immunity from taxation, by the
State to the W. & St. P. R. Co., by a law passed after the adoption of the
constitution.

Case certified from the district court for Redwood and
Lyon counties, *Hanscome,* J., presiding.

*Geo. P. Wilson,* Attorney General, for the State.

*Wilson & Taylor,* for defendant.

BERRY, J. This case comes to the court under the pro-
visions of § 120, ch. 1, Laws 1874. It appears that the
lands sought to be subjected to taxation " were granted and
conveyed by the government of the United States to the
Territory of Minnesota, to aid in the building of said line of
railroad, under and in pursuance of an act of congress, ap-
proved March 3, 1857, entitled ' An act making a grant of
lands to the Territory of Minnesota, in alternate sections,
to aid in the construction of certain railroads in said terri-
tory, and granting public lands in alternate sections to the
State of Alabama to aid in the construction of certain rail-
roads in said state ;' and under an act of congress, ap-
proved March 3, 1865, entitled ' An act extending the time
for the completion of certain land-grant railroads in the
States of Minnesota and Iowa, and for other purposes ;' and
under and in pursuance of an act of congress, approved
July 3, 1866, entitled ' An act relating to lands granted to
the State of Minnesota to aid in constructing railroads ;' and

under and in pursuance of certain acts of congress amendatory of said acts.

"That said lands were, prior to the first day of January, 1874, conveyed by the governor of the State of Minnesota, and deeded to the said Winona & St. Peter Railroad Company, under and in pursuance of an act of the legislature of the Territory of Minnesota, approved March 3, 1855, entitled 'A bill to incorporate the Transit Railroad Company;' and under and in pursuance of an act of the legislature of said Territory of Minnesota, approved May 22, 1857, entitled 'An act to execute the trust created by an act of congress, and granting lands to the Transit Railroad Company;' and under and in pursuance of an act of said legislature of the State of Minnesota, approved March 10, 1862, entitled 'An act to facilitate the construction of a railroad from Winona westerly by way of St. Peter;' and under and in pursuance of an act of the legislature of said State of Minnesota, approved March 4, 1865, entitled 'An act to authorize the Winona & St. Peter Railroad Company to consolidate with the Minnesota Central Railroad Company, and to bridge the Mississippi River.'

"That said lands were, at the date of the assessment thereof for taxes of 1873, owned by the said Winona & St. Peter Railroad Company, and are still owned by the said company; and were, by the assessors, placed on the lists for taxation for the said year 1873." We deem it important to emphasize the fact that, as appears from the stipulation itself which is returned here, and from the "statement" of the court below, it is *expressly stipulated* in this case that the ownership of the lands to which the proceeding relates is in the W. & St. P. R. Co.

By § 4, sub-chapter 2, of the act of May 22, 1857, it is enacted that the lands granted by said act to the Transit Railroad Company, "shall be and are exempted from all taxation, until the same shall have been sold and conveyed by said company." For an account of the manner in which the Winona & St. Peter Railroad Co., in accordance with

the doctrine of *First Division of the St. Paul & Pacific R. Co.* v. *Parcher*, 14 Minn. 297, succeeded to the "rights, benefits, privileges, property, franchises and interests," of the Transit R. Co., it will be sufficient to refer to the case of *Huff* v. *Winona & St. Peter R. Co.*, 11 Minn. 180; and it follows from this fact of successorship, that the lands to which the present proceeding relates, being exempt from taxation, were illegally taxed, this case being ruled by *First Div. St. P. & P. R. Co.* v. *Parcher*. It is, however, contended by the attorney general that, in the case against Parcher, this court was not called upon to consider, and did not pass upon the question raised by the constitutional requirement that "laws shall be passed taxing   *   *   * all real and personal property at its true value in money," and further that this constitutional provision in effect prohibited and rendered void the transfer, by a law passed after the adoption of the constitution, of the immunity from taxation which was originally conferred upon the Transit Company, and which is now claimed by the Winona & St. Peter Company, as its successor. It is true that this constitutional provision does not appear to be considered in the opinion of this court in the case referred to. But the consideration and disposition of the point made upon it, is involved in what is said, (on pages 328, 331 of the published opinion,) to the effect that it is by *virtue of the amendment to the constitution* that this immunity from taxation, (whether it be regarded as a franchise, or as a right appendant to the lands to which it related,) was permitted to be made the subject of the mortgage and forfeiture to the state, and was therefore transferable to the purchaser at the mortgage sale, or to the state under a forfeiture, and also by what is further said in the opinion in reference to the right of the state to hold and transfer whatever it acquired as purchaser at the foreclosure sale, or by virtue of the forfeiture, as property, as a private person might hold and transfer the same, without merger or extinguishment of any of the franchises, rights or immunities possessed by the mortgagors,

and which had become the subject of mortgage or forfeiture, under the provisions of the constitutional amendment. In other words, the constitutional amendment, popularly known as the Five Million Loan Amendment, is *controlling* in reference to its subject. It is not a mere act of the legislature, but a part of the organic and fundamental law, of equal authority, *per se*, with any other part of the constitution. Being a particular provision, with reference to a particular subject-matter, it is, within its own sphere, so far as that subject-matter is concerned, paramount and supreme. And it follows that its effect, in permitting the state, by the foreclosure or forfeiture, to acquire, hold and transfer the immunity from taxation, according to the doctrine of the Parcher case, is not controlled or overridden by the general constitutional provision in regard to taxation before quoted. In reference to the case of *Trask* v. *Maguire*, 18 Wall. 391, we think it may be distinguished in some important respects from the case at bar ; but if it be in point, we should not deem it to be our duty to recede from or overrule the views expressed in the Parcher case, upon its authority.

Our conclusion is that the judge of the court below was right in determining that the lands to which the proceeding relates were illegally taxed, and in discharging the same from the taxes assessed upon them, and the attendant costs and penalties, etc. His decision is accordingly affirmed.

The proper order in the case will be entered by the clerk, as provided by statute (Laws 1874, ch. 1, § 120.)